E. B. KNOLLHOFF ET UX V. WALLACE EUGENE NORRIS.

No. A-3769. Decided February 25, 1953
Rehearing overruled April 8, 1953.
(256 S. W. 2d Series 79)

*Jim C. Langdon*, of McCamey, for appellants.

*Hart Johnson* and *Connell Ashley*, both of Fort Stockton, for appellee.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This is a child custody matter which reaches us by certified question.

Wallace Eugene Norris and Marian Norris, husband and wife, were divorced. The custody of a baby girl, Vera Lynn Norris, (now five years old) was awarded to Marian as the mother who thereafter died in Lubbock. The father lived in Pecos County. Immediately following the mother's death, a Mr. and Mrs. E. B. Knollhoff, whose relationship to the child is not apparent from the record, took the child from Lubbock to their home in Sudan, Lamb County, Texas.

On November 5, 1951 the father, W. E. Morris, filed a pleading in the district court of Pecos County called an "application

for Writ of Habeas Corpus."[1] In response to this pleading the District Judge issued a writ addressed "To the sheriff or any Peace Officer of the State of Texas" and commanding that those addressed "forthwith take and bring the said Vera Lynn Norris before me at Fort Stockton, in Pecos County, Texas, to be dealt with according to law." This process was executed by several officers (including a deputy sheriff of Lamb County) by seizing the child and, over the protests of the Knollhoffs, taking her to Pecos County and delivering her to the District Judge. The following day the Knollhoffs filed a plea of privilege to be sued in Lamb County and on the same day the Judge by order duly entered found that it would be for the best interest of the child that her temporary custody pending the hearing of the plea of privilege and final hearing of the case on its merits be placed with the Knollhoffs at Sudan, Texas, and ordered that temporary custody be awarded accordingly.

The trial court overruled the plea of privilege and the Knollhoffs appealed to the Court of Civil Appeals. On original submission opinions were filed by all three members of that court, the majority agreeing that the judgment of the trial court should be affirmed. 250 S.W. 2d 434.

---

[1] "* * * Now comes WALLACE EUGENE NORRIS, for and on behalf of VERA LYNN NORRIS, a minor, four (4) years old, and also on behalf of himself, as the father of said minor, and shows unto the court that the said VERA LYNN NORRIS is illegally restrained of her liberty in Lamb County, Texas, by E. B. Knollhoff and wife, Margaret Knollhoff, and the exact place is in the City of Sudan in said county.

"Your petitioner further shows in this connection that said minor child was born of the marriage of your petitioner and MARIAN ALETHIA NORRIS, but that the said MARIAN ALETHIA NORRIS is dead, having died on December 7, 1951, and that your petitioner as the surviving parent of the minor child VERA LYNN NORRIS is the only person who is entitled to the care, custody and control of said minor child.

"That your petitioner and said minor child's mother had been divorced and at the time of the latter's death said child was residing with her mother and in some way unknown to your petitioner the said E. B. Knollhoff and wife Margaret Knollhoff took possession of said minor child immediately after her mother's death and have held such possession since then, and have repeatedly refused to deliver said minor child to your petitioner, though he has no several occasions requested and demanded of them that they do so.

"Your petitioner further shows that he resides in and has his domicile in Pecos County, Texas, which is one of the counties of the 112th Judicial District of Texas, of which your Honor is the District Judge, and that since the residence of his minor child VERA LYNN NORRIS is also in Pecos County, Texas, with your petitioner as her natural father, your Honor has jurisdiction to grant a writ of habeas corpus as hereinafter prayed for.

"WHEREFORE, premises considered, your petitioner prays that your Honor grant and issue the writ of habeas corpus to have the said VERA LYNN NORRIS forthwith brought before your Honor, at such place as your Honor may designate and deem proper, and that upon hearing, the possession of said minor child be delivered to your petitioner as the natural father of said child, and for such other relief as your petitioner is entitled to."

Associate Justice Sutton was of the opinion that the proceeding was not a custody suit between Norris and the Knollhoffs as adverse parties but was a summary proceeding for possession only to which the venue statutes did not apply. Chief Justice Price agreed with Justice Sutton but pointed out that the Knollhoffs were neither sued nor served with any form of citation and expressed the view that by their voluntary filing of a plea of privilege before process had been issued and before they were compelled by compulsory process to answer they had made an appearance in the case, requiring the overruling of the plea of privilege. Associate Justice McGill dissented on the ground that custody of the child was at issue, that the proceeding was a civil suit and that the venue statute (Art. 1995) provided in this type of case no exception from the general rule entitling the defendants to have the case tried in the county of their residence.

After motion for rehearing was overruled the Court of Civil Appeals certified to us the following questions:

"Question No. 1. Under the facts as above stated, was the question of the custody and possession of the child, Vera Lynn Norris, involved in this case so as to be a civil action wherein Appellants have been sued within the purview of the Venue Statute, Article 1995?

"Question No. 2. Under the facts as above stated, were Appellants adverse parties to the application on which the writ was issued and under which they were deprived of the custody and possession of the minor child, Vera Lynn Norris, and were they sued within the purview of the Venue Statute?

"Question No. 3. Did Appellants, by appearing and filing their plea of privilege in this proceeding, no process having been served on them requiring them to appear therein, waive their privilege to be sued in Lamb County?"

We have concluded that the first two questions should be answered yes.

■ It is true that the legal custody of the child vested automatically in Norris when the child's mother died, and it is undoubtedly true also that from that moment he was legally entitled to the physical possession of the child. But he did not have that possession. In order to obtain it he petitioned the district court, in the exercise of its constitutional jurisdicion of

general control over the minor and through its writ of habeas corpus, "to have the said Vera Lynn Norris forthwith brought before your Honor, at such place as your Honor may designate and deem proper, and that upon hearing, the possession of said minor child be delivered to your petitioner * * *." The writ issued by the court, though perhaps in form without authority of law, commanded the sheriff or other peace officer "to forthwith take and bring the said Vera Lynn Norris before me at Fort Stockton, in Pecos County, Texas, to be dealt with according to law." It thus appears from the application for writ of habeas corpus filed by Norris that he invoked, and from the writ issued by the court that it took jurisdiction to deal with the person of the minor.

■   While it has been held that a court may not take jurisdiction to adjudicate the custody of a minor on its own motion, Hardy v. McCulloch, Tex. Civ. App., 286 S.W. 629, writ refused, it has also been held that a child becomes a ward of the court when it is brought before the court for any purpose. In re Badger, 286 Mo. 139, 226 S.W. 936, 14 A.L.R. 286; 27 Am. Jur. Infants, §105, p. 827; 43 CJS, Infants, §7, p. 56. One cannot invoke the jurisdiction of the court to deal with the personal status or the person of a child and at the same time deny the power of the court, in that proceeding, to do with the child's person or his status whatever appears to the court to be for the best interest of the child. The petitioner having brought the child before the court could not by the nature of his pleading limit the constitutional jurisdiction of the court to deal in fullest measure with the child's person or status. In other words, the proceeding to obtain physical possession of the child automatically invoked the power of the court to adjudicate custody, and was, therefore, a suit involving custody as well as possession. To hold otherwise might well lead to disastrous results. Suppose one having legal custody sued out a writ of habeas corpus for possession only and had the child brought before the court, whereupon it became obvious that the petitioner was a confirmed drunkard or of deranged mental faculties. Can it be thought that by the act of having the child taken from the possession of another and brought before the court the constitutional jurisdiction of the court would be exhausted and that the court could not deny the possession of the child to the petitioner and give its physical possession and its custody to another? Surely not. Neither our law nor our courts should be held to be so impotent. In the case of Green v. Green, Tex. Civ. App., 146 S.W. 567, writ dismissed, a wife filed a suit to enjoin her husband from removing their

children out of the state and asking that the order of restraint require the return of one child to her, which it accordingly did. The order was attacked on the ground that the nature of the pleading would not support a custody order, but the court said: "* * * a pleading which shows upon its face that the welfare of a minor child requires that an order be made by a district court or a judge thereof, is amply sufficient to warrant the court or such judge in making such order as in his discretion may appear right and proper for the welfare of the child."

From what has been said it follows that this proceeding, although initiated by application for writ of habeas corpus and intended perhaps to determine possession only, nevertheless was one involving custody also and was a civil suit the same as all other proceedings to adjudicate custody initiated by application for writ of habeas corpus. Legate v. Legate, 87 Texas 248, 28 S.W. 281. That the trial court shared the views here expressed is attested by the fact that after a hearing it awarded temporary custody of the child to the Knollhoffs.

For largely the same reasons we also hold that the Knollhoffs were adverse parties to the proceedings and were sued within the purview of the venue statute. The application for the writ of habeas corpus recited that the Knollhoffs had the child illegally restrained of her liberty and continued: "E. B. Knollhoff and Margaret Knollhoff took possession of said minor child immediately after her mother's death and have held such possession since then, and have repeatedly refused to deliver said minor child to your petitioner, though he has on several occasions requested and demanded of them that they do so." This very recitation shows indisputably that Norris recognized that the Knollhoffs were denying his right to the possession or continued custody of the child and were asserting an adverse right thereto. Norris knew also that the only legal writ issuable upon his application was required to be issued to the Knollhoffs. (Arts. 113 and 114, Code of Criminal Procedure) commanding them to produce such child and show why she was held in custody or under restraint. He therefore knew that when so commanded the Knollhoffs would have the right to appear and contest his right to possession and continued custody of the child, with the ancillary right to file whatever pleadings they deemed appropriate, including the plea of privilege. This is merely the usual and customary manner of proceeding in any suit involving custody of a child begun by application for writ of habeas corpus. Lakey v. McCarroll, 134 Texas 191, 134 S.W. 2d 1016. As was

said by Associate Justice McGill of the El Paso Court in his dissenting opinion: "* * * it may be noted that appellee in this' case did not purport to apply for the writ solely in behalf of the minor child to obtain her liberty. Appellee applied for the writ in his own behalf and for his own benefit * * *."

Our affirmative answer to questions 1 and 2 finds support in the case of Finney v. Walker, Tex. Civ. App., 144 S.W. 679, no writ history, which appears to be squarely in point on the facts. It finds support also in the language of the Court of Criminal Appeals in the case of Ex parte Reed, 34 Texas Crim. Rep. 9, 28 S.W. 689, in which a mother filed an application for writ of habeas corpus, alleging that her minor daughter was "held and illegally restrained of her liberty by one Eugene Burnett, who was in no way related to the child; but, that, as her mother, relator was entitled to the custody of the child * * *." The Court of Criminal Appeals held that it had no jurisdiction of the appeal in the matter because it was a civil proceeding but said: "We say it is a civil proceeding, for, though the theory of the writ in such a case is that it relieves from improper restraint, yet *the true question in the proceeding is to determine what is for the best interest of the child, in whose custody it should be placed.*" (Emphasis added)

It is contended that the views here expressed would lead to an unjust result in that they would require one already having legal custody and the right of possession of a child to relitigate those same issues in the county of residence of an interloper or even a kidnapper. In answer it may be said that the legislature simply has not written and probably cannot write the venue statute so as to eliminate all unjust results. It may be that it could add a beneficial exception to the general rule of venue to be applied in child custody proceedings but it has not done so and we have no power to add it.

It may be said that the views here expressed would **reward** him who violates the peace of the community and takes possession of the person of a child by force and would penalize him who seeks to enforce his right of possession by peaceful means in a resort to the courts. No doubt this is true; but, again, the result is not unique in this respect. In custody proceedings between separated but undivorced parents, or between divorced parents where award of custody was not made at the time of divorce, where each parent has equal right to custody, it is held that the defendant may insist on his privilege to be sued in the

county of his residence. O'Quinn v. O'Quinn, Tex. Civ. App., 57 S.W. 2d 397, no writ history; Isom v. White, Tex. Civ. App., 202 S.W. 2d 486, no writ history. The net result in these cases is that the parent who by force can compel the other to assume the role of plaintiff and bring the suit will be rewarded by being privileged to try the case in the county of his or her residence.

■ The third question certified should be answered no. The writ of habeas corpus, properly issued, would have commanded appellees to produce the child before the court, whereupon appellees would not have been volunteers in court. Their right to plead their privilege could not be defeated by an erroneous direction of the writ to the sheriff or any peace officer of the State of Texas. The manner in which the writ was issued and executed served all the purposes of a decree of temporary custody. One sued for custody of a minor from whom the minor is taken on an ex parte order of temporary custody cannot be required to await service of citation which, under the direction of a plaintiff, might never be served thereby permitting the temporary order to serve all the purposes of a final judgment, at the risk of waiving his venue privilege if he files a plea of privilege.

Opinion delivered February 25, 1953.

MR. JUSTICE WILSON, joined by JUSTICE SMEDLEY, dissenting.

I respectfully dissent from the answer of the court to Certified Questions No. 1 and 2. Here we hold that "the proceeding to obtain physical possession of the child automatically invoked the power of the court to adjudicate custody, and was, therefore, a suit involving custody as well as possession." This case climaxes a series of cases which together render impotent, in so far as children are concerned, the constitutional writ of habeas corpus. Liberty can be lost by frustration of the remedies securing it just as in other ways. Our valuable constitutional guarantee of a remedy to make certain the liberty of the citizen —the writ of habeas corpus—should not be debased to the status of a mere citation.

Section 12, Art. 1 of the Texas Constitution quite plainly intended to establish by habeas corpus a summary process for quick relief from unlawful restraint. The Constitution's language will take no other construction:

"The writ of habeas corpus is a writ of right, and shall never

be suspended. The Legislature shall enact laws to render the remedy speedy and effectual."

This command to keep the remedy of habeas corpus speedy and effectual is violated by the decision at bar because the right to file a plea of privilege (accompanied by an appeal) in response to the writ takes any possibility of speed out of the writ and thus renders it ineffectual.

I agree with Judge Sutton who states:

"* * * It certainly would be a novel absurdity if anyone, more especially a stranger, could deprive a small child of its domicile and a parent of its lawful possession and rob the writ of habeas corpus of one of its most important functions—speedy relief from illegal restraint—by the simple expedient of filing a formal plea of privilege when no legal right or interest is asserted or can be, and compel the child and parent to defend the domicile and custody in a distant forum. * * *"

This writ of habeas corpus has been called "the birthright of the citizen" (Yates v. The People, 6 Johnson's Reports, N. Y. 337, at p. 405) and it should remain uncomplicated and summary. It is the foundation rock upon which the liberty of the citizen is bottomed. The better practice in custody suits would be—and I think should have been from the first—to initiate the suit by petition and citation and use the writ of habeas corpus as an extraordinary ancillary remedy where there is need that the child be produced immediately in court. Were this established as standard procedure, as this court has the power to do, problems of custody would be litigated by petition and answer and the writ of habeas corpus would remain a special means of producing a child in court.

At early common law the forms of action developed from the writs. Yates v. The People, supra; Plucknett, *A Concise History of the Common Law.* Thus a litigant's substantive rights were necessarily determined by the choice of remedy available. In Texas the common law forms of action were never adopted and a litigant's substantive rights in an adversary proceeding are now and have always been determined from the pleadings. The substantive rights of the parties are not measured and determined by a particular writ. The writ is traditionally the process by which the trial court takes action. It is a command. Therefore we should look first to the pleadings to determine the issue.

Here the pleadings make no issue on the right to custody. The only pleadings filed by the appellants, Knollhoffs, was a plea of privilege in which they neither denied the father's right to custody nor alleged facts negativing the father's right of custody. Under our practice perhaps they could not expand the plea beyond the allegations specified in the venue statute. In his controverting affidavit the father plead:

"This suit is not a suit for the custody of said minor child because such custody is vested absolutely in plaintiff as a matter of law, and the defendants have not sought in any way to secure her custody by process of law, but are simply illegally restraining her of her liberty in Lamb County, Texas, and hence that the usual rule of venue requiring a person to be sued in the county of his residence does not apply, * * *."

Where, from the face of the father's pleading considered along with his controverting affidavit, the matter should not be subject to a change of venue, it is not a "suit" within the meaning of Art. 1995, R.C.S. The Knollhoffs might have proven at the venue hearing facts showing that the relief sought in the father's pleading was not the true issue and that the true issue would be entirely different. They could have offered proof that the father was not entitled to custody. Failing in this, it is only right that the child be placed in the possession of the lawful custodian. Then the Knollhoffs could file a custody suit if they wished to prove, say, changed conditions. This would be a civil suit for custody. Herrington v. McDonald, 141 Texas 441, 174 S.W. 2d 307. This they did not do.

The only proof offered was a stipulation of fact which does not challenge the father's right to custody or support any right in the Knollhoffs. That being true, the relief sought is for the child to be produced in court and delivered to its unchallenged custodian. A habeas corpus to enforce an unchallenged custody should not be an adversary proceeding and should not be a suit within the meaning of the word "sued" as used in Art. 1995 R.S. 1925. Where one adult challenges another's right to the custody of a minor, the proceeding is adversary and under our practice is a civil suit however initiated.

In Quick v. Lindsay, 208 S.W. 2d 910, it was recognized that a cause of action to change an established custody is different from a proceeding by habeas corpus to enforce an already established custody. The court said:

"* * * The parties are disagreed as to the nature of this proceeding. It is the position of defendants that this is a suit concerning the custody of two children, born of the former marriage between plaintiff, Albert H. Lindsay, and one of the defendants, Dorothy Lindsay Pressler. The position of plaintiff is that this is a proceeding instituted by plaintiff to enforce his lawful custody of said children."

The court went on to hold that since the applicant for habeas corpus had alleged facts showing changed conditions occurring after a previous adjudication of custody the suit was in fact "to relitigate and readjudicate custody of children under allegations of a change in conditions" and as such was a new and independent suit subject to plea of privilege. The court recognized that there might be a proceeding to enforce custodial rights which would not put in issue the original adjudication of custody. The court said:

"* * * Hence, if those who were vested by a final judgment with custodial rights, found that their effective exercise of those rights were interfered with by an abuse of the rights of visitation, a proceeding to correct such abuse, and to vindicate the right to exercise of custodial rights awarded by the court's judgment, cannot be classified by the law for any purpose as a new and independent suit. Such a suit does not seek any change in custodial rights."

The mother's custody automatically ceasing upon her death, it was transferred by operation of law to the father without the need of adjudication. The State stands in loco parentis to all children. It relies upon the parents, who have the primary duty, to take care of and protect children, and in the absence of a showing of unfitness, the law upon the death of one parent fixes the custody of their children in the other. Peacock v. Bradshaw, 145 Texas 68, 194 S.W. 2d 551-555.

The allegations in the application for habeas corpus at bar that custody originally adjudicated to the mother vested upon the mother's death by law in the father are not allegations of changed conditions requiring a readjudication of the question of custody. Therefore, this is not a suit alleging changed conditions and for that reason is not within such cases as Black v. Black, 2 S.W. 2d 331, O'Quinn v. O'Quinn, 57 S.W. 2d 397; and Green v. Spell, 191 S.W. 2d 92, wr. er. ref., Per Curiam, 144 Texas 535, 192 S.W. 2d 260.

The court's primary duty is to the child. When a child comes before the court, the court always has the burden of delivering a helpless child of five years to a fit person. Subject to that, the court had the duty to place the child in the possession of its legal custodian. The majority advance the argument that the only way to prevent the court's delivering a helpless child to a drunkard or insane person (upon whom custody may have devolved by law) is by making each appearance of a child before a district court a custody trial. This ignores the general equity jurisdiction of a district court over minors. In establishing the framework of our legal system we must proceed upon the assumption that a district judge is a man of judgment and common sense who will use it. The language in the Civil Appeals case of Hardy v. McCulloch, 286 S.W. 629, does not support the conclusion that a district judge cannot on his own refuse to deliver a child to an unfit custodian, and if it did support such a construction it would clearly be wrong.

The North Carolina Supreme Court in the case of McEachern v. McEachern, 210 N.C. 98, 185 S.E. 684, held (possibly dicta) that because a habeas corpus is "a high prerogative writ" and because it can be issued by one district court and made returnable to another, it was not subject to the equivalent of our plea of privilege to change venue. The court said:

"What is the proper venue for the hearing on a writ of habeas corpus?

"The statutes as to venue, C.S. Sec. 463, et seq., all refer to 'actions' and have no reference to proceedings of this kind. The writ of habeas corpus has been denominated a 'high prerogative writ.' Its suspension is prohibited by the Constitution of North Carolina, Art. 1, Sec. 21."

Under the pleadings in this case the Knollhoffs were not adverse parties. The demand made upon them was to produce the child in court. I agree with Judge Sutton when he says:

"* * * Norris did not seek the writ to determine the custody of the child. He already had it. His sole purpose was to relieve the child of the illegal restraint. When relieved of that restraint he, of course, obtained possession of her, and that was a primary object of the proceedings, it must be conceded. The action of Norris was in defense and preservation of his custody and not to fix it. * * *"

I would answer Question No. 1 that a habeas corpus for

possession only and to enforce an existing and unchallenged custody is not within the purview of the venue statute. I would answer Question No. 2 that the Knollhoffs were not adverse parties.

Rehearing overruled April 8, 1953.

Opinion delivered February 25, 1953.